ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

KRISTINA GREEN (NYBN 5226204)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6912
    FAX: (415) 436-7027
    Kristina.Green@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>ISAAC ISRAEL NUNEZ,<br><br>    Defendant. | CASE NO. 24-CR-00523 JD<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date:  February 3, 2024<br>Time:  10:30 a.m.<br>Court:  Hon. James Donato |

## I.   OVERVIEW

On December 16, 2024, the defendant, Isaac Israel Nunez, pled guilty to a one-count Information charging him with possession with intent to distribute a mixture and substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). *See* Plea Agreement, ECF No. 18. The United States respectfully requests that the Court sentence the defendant, to a sentence of time served plus one day (a 3-month downward variance from the Guidelines range), three years of supervised release, and the forfeiture and special conditions specified in the Plea Agreement (ECF No. 18). This case is part of the United States Attorney's Office's efforts to disrupt the fentanyl and

methamphetamine open-air drug market that exists in San Francisco's Tenderloin District (the Tenderloin) through a combination of enforcement and dispositions that prevent drug traffickers from returning to the Tenderloin. These efforts will occasionally take the form, as here, of prosecution of street-level dealing where the defendant has limited criminal history, leading the United States to seek expedited prosecution, obtain a federal conviction, and enforce a strict three-year stay-away order that immediately excludes convicted drug traffickers from returning to the Tenderloin and thus dissuades them from engaging in further drug trafficking. For the reasons set forth below, the United States and the defendant believe that a below-Guidelines sentence—accounting for the time served plus one day in this expedited prosecution—alongside this geographical restriction meet the statutory requirements of Section 3553(a).

## II.   APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY

The government's Guidelines calculation matches that of Probation. *See* Presentence Report ("PSR") ¶¶ 12-21:

a. Base Offense Level, U.S.S.G. §2D1.1:                                                                16
Defendant possessed at least 20 kg but less than 40 kg of converted drug weight)[1]

b. Zero Point Offender Adjustment, U.S.S.G § 4C1.1                                       - 2

c. Acceptance of Responsibility, U.S.S.G. §3E1.1:                                           - 3

d. Adjusted Offense Level:                                                                              11

The government agrees with Probation that Nunez has a Criminal History Category of I (0 points).[2] *See* PSR ¶¶ 24-25.

An Adjusted Offense Level of 11 and a Criminal History Category of I results in a Guidelines range of 8-14 months. *See* PSR ¶ 51.

The government also seeks a three-year term of supervised release (as required by statute), imposition of the $100 mandatory special assessment, and forfeiture as agreed-upon in the Plea Agreement.

---

[1] *See* Addendum – Converted Drug Weight Table.

[2] The government has reviewed and produced in discovery the criminal history report for the defendant available through the National Crime Information Center, a criminal records database. That report reflects that the defendant does not have any prior criminal convictions.

### III.   SENTENCING RECOMMENDATION

Consistent with the Plea Agreement in this case, the government requests a sentence of time served plus one day and a three-year term of supervised release that includes a special condition that the defendant may not re-enter the Tenderloin during the period of supervised release. This stay-away condition is a critical component of the plea bargain because it prevents the defendant from returning to the Tenderloin, from where the defendant's conviction for drug trafficking arises.

**A.   Section 3553 Factors**

1. ***Nature and circumstances of the offense and history and characteristics of the defendant***

The defendant is a 33-year old male who was born in Honduras. According to the Department of Homeland Security, the defendant lacks immigration status and/or is removable under U.S. immigration law. There is an immigration detainer in place such that the parties expect the defendant will be transferred to the custody of the Department of Homeland Security for removal proceedings following his release from the custody of the U.S. Marshals. To the government's knowledge, the defendant has no prior criminal convictions, placing him in Criminal History Category I.

On July 25, 2024, San Francisco Police Department officers were conducting surveillance in the Tenderloin. PSR ¶ 6. At approximately 2:43 a.m., an officer observed Nunez conduct a hand-to-hand narcotics transaction with another man near 808 Larkin Street. *Id.* Officers subsequently arrested Nunez and located the following on his person: approximately 5 grams of methamphetamine (gross); approximately 5.1 grams of cocaine salt (gross); approximately 14.5 grams of heroin (gross); approximately 34.8 grams of cocaine base (gross); a cell phone (which he admitted to using in connection with his drug dealing activities); and $249 in U.S. currency in small denominations (at least some of which Nunez admitted he had earned and planned to use in connection with his drug sales). *See* Plea Agreement ¶ 2; *see also* PSR ¶¶ 6-7.

Nunez has no prior criminal convictions; however, he was arrested in August 2021 and September 2024 in San Francisco for drug-related offenses. *See* PSR ¶¶ 27-28. On August 2021, Nunez was arrested after allegedly selling methamphetamine to an undercover officer. Officers also found suspected cocaine base, suspected methamphetamine, and suspected heroin on Nunez's person. PSR ¶

27. This case was dismissed in the furtherance of justice in March 2022. On September 5, 2024, after the offense underlying Nunez's instant conviction, San Francisco Police Department officers obtained a warrant to search Nunez's and another individual's residence. PSR ¶ 28. Officers observed Nunez and the other individual travel from their residences to Franklin Street. *Id.* Officers detained both individuals, searched them, and found drugs on both their persons. Officers allegedly found the following on Nunez's person: 8 bags of cocaine base (40.6 grams gross), 13 bags of methamphetamine (15.5 grams gross), and 23 bindles of heroin (19.4 grams gross). *Id.* Officers also searched Nunez's residence and found multiple scales, razor blades, cutting boards, packaging materials, plastic bags, and $1,500 in U.S. currency. *Id.* By being present in the Tenderloin on September 5, 2024, Nunez was also in violation of a stay-away order. *Id.* This case was dismissed on September 20, 2024.

Nunez is not a citizen or national of the United States and is a citizen of Honduras. He was previously removed from the United States in or around 2016. He subsequently reentered the United States illegally and has no legal status in this country.

The defendant has been in custody since September 20, 2024, when he was arrested pursuant to a federal warrant (approximately five months). PSR at 1. After his federal arrest, the defendant agreed to remain in custody during the pendency of this case.

> 2. ***Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant***

The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin District and much of the South of Market neighborhood, is in crisis. As the Court is well aware, the proliferation of highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and methamphetamine has exacted a crushing human toll in the Tenderloin. The Tenderloin open-air drug market not only creates suffering for its participants (including staggering amounts of overdoses and fatalities) but also dire externalities for the people and families that live and work in the Tenderloin, as well as for San Francisco itself. The effects of the defendant's offense, considered as an individual act, are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

Given the relevant conduct and amount of controlled substances the defendant possessed, the

adjusted Guidelines range for the defendant's conduct is 8 to 14 months. The defendant has no criminal history. The proposed sentence—of time served plus one day and a three-year term of supervised release with a highly-restrictive geographic restriction—is a 3-month downward variance from the Guidelines range but one that the government submits is appropriate given the defendant's conduct and criminal history, the unique problem the Tenderloin faces, and the need for deterrence and protection of the public.

In order for the defendant to receive the plea offer outlined in the Plea Agreement, the defendant waived detention and has been in continuous custody since his federal arrest; the government offered the defendant a time-served sentence in exchange for the defendant's agreement to promptly plead guilty and proceed to sentencing (including waiving indictment) within months of arrest; the defendant also agreed to be subject to a three-year term of supervised release that includes a strict stay-away condition from the Tenderloin. The defendant is on notice that a return to the Tenderloin (in violation of the defendant's supervised release terms) will invite new charges or supervised release violations.

This disposition resulted in a drug trafficking conviction within three months of arrest (not years), immediate separation of the defendant from the Tenderloin, and prevention of the defendant from returning to the Tenderloin. The speed at which this case moved will free up other government resources to prosecute additional federal crimes, including in the Tenderloin.

**B.     The necessity of the proposed supervised release special conditions**

A three-year term of supervised release is required by statute for the drug-trafficking offense to which the defendant has pled guilty, 21 U.S.C. § 841(b)(1)(C), and it is essential to this disposition. In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest) and to effect a strict stay-away from the Tenderloin for three years. Under the terms of supervised release as contemplated herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, but the defendant will be prohibited from entering the Tenderloin without prior approval by U.S. Probation:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by

5

GOV. SENTENCING MEMO FOR NUNEZ
24-CR-00523-JD

Geary Street, on the east by Powell Street and 3rd Street, and on the south by Howard Street.

Combined with a suspicionless search condition, to which the parties have also agreed, Section 3553(a)'s goals of protection of the public and meaningful deterrence will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained. The stay-away condition is also necessary given the particular circumstances of Tenderloin drug trafficking, where the Court has repeatedly encountered recidivism from previously sentenced defendants, including those who have been removed from the country but who nonetheless returned to sell controlled substances in the Tenderloin. *See, e.g.*, *United States v. Luis Almicar Erazo-Centeno*, 3:23-cr-00002-CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553-CRB.

On the facts of this particular case, under the § 3553(a) factors and given the provisions of the Plea Agreement, the government respectfully submits that the recommended disposition here is sufficient but not greater than necessary to accomplish the goals of § 3553(a).

## IV.   CONCLUSION

For these reasons, the government recommends that the Court sentence the defendant to a sentence of time served plus one day, to be followed by a term of supervised release of three years and the special conditions agreed to by the parties in the Plea Agreement, including the stay-away condition. The government also recommends that the Court order forfeiture as agreed upon in the Plea Agreement, namely forfeiture of the iPhone and $249 that the defendant had in his possession on July 25, 2024.

DATED: January 22, 2025                                    Respectfully Submitted,

ISMAIL J. RAMSEY
United States Attorney


 */s/ Kristina Green*
KRISTINA GREEN
Assistant United States Attorney

GOV. SENTENCING MEMO FOR NUNEZ
24-CR-00523-JD

6

ADDENDUM – CONVERTED DRUG WEIGHT TABLE[3]

| Substance | Amount Possessed by Defendant | Conversion | Converted Drug Weight |
|---|---|---|---|
| Methamphetamine | 5 grams | 1 gram = 2 kilograms | 10 kilograms |
| Cocaine salt | 5.1 grams | 1 gram = 200 grams | 1.02 kilograms |
| Cocaine base | 34.8 | 1 gram = 200 grams (cocaine salt conversion) | 6.96 kilograms |
| Heroin | 14.5 grams | 1 gram = 1 kilograms | 14.5 kilograms |
| **Total** | - | - | **32.48 kilograms** |

---

[3] *See* §2D1.1, Application Note 8(D).